Filed 7/18/25  P. v. Gonzalez CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGEL GONZALEZ,<br><br>    Defendant and Appellant. | D082316<br><br><br>(Super. Ct. No. SCD251515) |


APPEAL from an order of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

Angel Gonzalez appeals from an order denying his petition for resentencing pursuant to Penal Code section 1172.6 (formerly § 1170.95)

after an evidentiary hearing.[1]  Gonzalez asserts the trial court should not have considered gang evidence from his underlying trial, and that with or without such evidence, there was insufficient evidence to support the trial court's finding that he could still be found guilty beyond a reasonable doubt of directly aiding and abetting attempted murder with intent to kill.  We conclude the trial court was not precluded from considering the gang evidence, as it was relevant to motive, and that substantial evidence supports the trial court's finding.  We therefore affirm the trial court's order denying Gonzalez's petition.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In September 2014, a jury found Gonzalez guilty of one count of willful, premeditated, and deliberate attempted murder and one count of shooting at an occupied vehicle.  The jury also found true allegations that both crimes were committed for the benefit of a criminal street gang and that a principal in the case personally used a firearm causing great bodily injury.  The trial court sentenced Gonzalez to 14 years to life in prison for the attempted murder, plus 25 years to life for the firearm enhancement, 5 years for a prior serious felony, and 2 years for two prior prison terms.  This court affirmed the judgment of conviction on appeal.

In August 2022, Gonzalez filed a petition for resentencing under section 1172.6.  The trial court appointed counsel for Gonzalez and set a briefing schedule.  The People conceded that Gonzalez was entitled to an evidentiary hearing, and the trial court issued an order to show cause why the requested relief should not be granted.

---

1     Further unspecified statutory references are to the Penal Code. Assembly Bill No. 200 (Stats. 2022, ch. 58, § 10) renumbered section 1170.95 to 1172.6, effective June 30, 2022.  We cite to the current statute herein.

In their briefing and at the evidentiary hearing, the parties relied on the record of conviction, including the transcripts and exhibits from the underlying criminal trial. Neither party presented any new evidence. Like the trial court, we have reviewed the underlying trial court transcripts. We summarize the evidence pertaining to the underlying crime, as presented in the original trial.

The shooting occurred on September 30, 2012, near the Korner Market in the Paradise Hills neighborhood of San Diego, a known territory for Paradise Hills gang members. Gonzalez, who had previously self-identified as a member of the rival Old Town National City (OTNC) gang, first arrived at the Korner Market at approximately 6:00 p.m., along with two females, Clarissa Lopez and her sister Priscilla. Gonzalez was driving a blue pickup truck.

Lopez had previously "hung out" with members of the Paradise Hills gang. There were two younger Paradise Hills gang members at the store. The Paradise Hills gang members challenged Gonzalez, referring to him as "Nalgero," a derogatory term for OTNC gang members, and made threats to Lopez for being there with Gonzalez. The store manager overhead one of them say, "call Bugsy." After the interaction, Gonzalez calmly left the store with the two females. They approached Gonzalez's pickup truck to leave, but it was blocked into the parking spot by an SUV driven by the victim, Jose Ramirez, who Lopez knew as "Bugsy." Ramirez was from Paradise Hills, and Lopez used to be good friends with his wife, but she no longer talked to either of them.

Gonzalez got out of the truck and spoke with Ramirez. Lopez heard Gonzalez say, "I'm Angel Vargas from OTNC." Ramirez replied, "okay, okay," and shook Gonzalez's hand before returning to his vehicle and moving so

3

Gonzalez and the two women could leave. Gonzalez and the two women picked up some food and, by at least some accounts, Gonzalez left, alone, in his truck.

Gonzalez returned to the Korner Market about 35 minutes after leaving, still driving his blue pickup truck. He circled around the parking lot, driving in and out three or four times. The manager at the market and a neighbor heard four gunshots. The neighbor looked outside and saw a man trying to get into the backseat of the truck but having trouble because someone was already in the front passenger seat. The people in the truck were shouting at him, and then the truck sped away at high speed.

Ramirez was driving by the store, in the same SUV he was driving earlier that day, and was shot in the back. He survived, but doctors were unable to remove bullet fragments near his spine. The police later recovered an expended bullet fragment on the sidewalk near the store and a bullet embedded in the front passenger door of the SUV. Video surveillance captured the pickup truck driving around the parking lot. The images were not clear enough to identify the shooter, but there was no dispute that Gonzalez was the driver, not the shooter.

National City Police Detective Mark Segal testified as a gang expert for the prosecution. Segal explained the importance of respect in gang culture, and that it was disrespectful for a gang member to show up in a rival gang's territory, especially while displaying rival gang tattoos. He explained further that when a gang member is disrespected, retaliation is required. A gang member earns more respect if they commit a crime, or retaliate, in rival gang territory, and it is not unusual for the disrespected individual to enlist the help of another gang member. Generally, gang members avoid violence in

the presence of females, as they are supposed to protect females. It would be unusual for a female to commit violence in retaliation for gang disrespect.

In addition to adopting the foregoing facts from the prior appellate opinion, the trial court in this matter took "specific note of the defendant's driving pattern for the approximate 10 minutes prior to the actual shooting. It has been agreed that the defendant was not the actual shooter." The court found, "as did the jury, that the defendant was the driver of the vehicle that the shooter stepped out [of] to shoot the victim and the defendant drove the shooter from the scene. Describing the defendant's driving pattern as taking several passes through the parking area of the Korner Market prior to the shooting does not adequately describe his actions. His speed and route varied, he stopped momentarily at points, and even backed up, waited, and then pulled into the parking area again." From this evidence, the trial court concluded the only reasonable interpretation was that Gonzalez "was seeking out the victim with the intent to kill him."

Accordingly, the trial court found Gonzalez could still be convicted of attempted murder as a director aider and abettor with intent to kill and denied the petition.

Gonzalez filed a timely notice of appeal.

## II.    DISCUSSION

Gonzalez asserts there was insufficient evidence to support the trial court's finding that he could be guilty of attempted murder based on a theory that he aided and abetted the shooter with a specific intent to kill Ramirez. He asserts the gang evidence should have been excluded, and argues that because the shooter was not identified, there was no evidence that the shooter was a gang member or that the shooting was gang motivated.

5

## A. Relevant Legal Principles

In 2018, the Legislature passed Senate Bill 1437 and "made significant changes to the scope of murder liability for those who were neither the actual killers nor intended to kill anyone, including certain individuals formerly subject to punishment on a felony-murder theory." (*People v. Strong* (2022) 13 Cal.5th 698, 707.) "Senate Bill 1437 significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*Strong*, at pp. 707–708.)

In addition, "Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*People v. Curiel* (2023) 15 Cal.5th 433, 449.) Thus, as the law now stands, "[o]utside of the felony-murder rule, 'a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea.'" (*Id.* at p. 448.)

In October 2021, the Legislature passed Senate Bill 775 amending section 1172.6 to expand eligibility for resentencing to persons convicted of attempted murder under the natural and probable consequences doctrine. (2020−2021 Reg. Sess. ch. 551, § 1.)

6

Senate Bill 1437 also enacted current section 1172.6, which permits defendants "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)(1)) to file a petition requesting that their conviction be vacated on the grounds that they "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) If the defendant makes the requisite prima facie showing, the trial court shall issue an order to show cause why the relief should not be granted and shall hold an evidentiary hearing to determine whether to vacate the conviction at issue and resentence the defendant on any remaining counts. (*Id*., subds. (c), (d)(1).)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements

attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

Where, as here, the trial court finds that the prosecution has met its burden to prove beyond a reasonable doubt that the defendant could have been convicted under the current law, we review the trial court's factual findings for substantial evidence. (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1017 (*Henley*); *People v. Wilson* (2023) 90 Cal.App.5th 903, 916 (*Wilson*).) We review the record in the light most favorable to the judgment, and consider whether there is sufficient evidence of reasonable, credible, and solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Henley,* at p. 1017.)

To the extent that our analysis turns on the application of the facts as found by the trial court to the law, our review is de novo. (*Henley, supra,* 85 Cal.App.5th at p. 1017; *Wilson, supra,* 90 Cal.App.5th at p. 916.) Thus, "where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) At the same time, we presume the trial court was aware of and followed applicable law unless the record affirmatively demonstrates error. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496 (*Mosley*).)

## B. The Trial Court Properly Considered the Gang Evidence

The People alleged, and the jury found true, an allegation that Gonzalez committed the crime of attempted murder for the benefit of a criminal street gang, in violation of section 186.22.

At the time of the underlying trial, in 2014, former section 186.22, subdivision (e), defined a " 'pattern of criminal gang activity' " as requiring the commission of "two or more of [certain enumerated] offenses, provided at

least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons."

Assembly Bill No. 333 became effective on January 1, 2022, after the jury convicted Gonzalez but before he filed his petition for resentencing. (See Stats. 2021, ch. 699, § 3, eff. Jan. 1, 2022.) It amended section 186.22 to impose additional elements necessary to prove the substantive crime of active participation in a criminal street gang and required the trial court to bifurcate gang enhancement allegations upon the defendant's request. (*Ibid*.) As relevant here, Assembly Bill No. 333 amended the statutory definitions of "criminal street gang"—to require that its members "*collectively* engage in, or have engaged in, a pattern of criminal gang activity"—and " 'pattern of criminal gang activity' "—to require that "the [predicate] offenses commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational." (§ 186.22, subds. (e)(1), (f), italics added.)

Gonzalez concedes the evidence was sufficient to prove the gang enhancement as the law existed at the time of trial but asserts it "was plainly insufficient to prove that the OTNC gang 'collectively engaged in' a pattern of criminal gang activity," or that the predicate offenses benefited the OTNC gang in any tangible way. He contends further that section 1172.6, subdivision (d)(3), allows the trial court to consider only evidence that would be currently admissible.

As an initial matter, Gonzalez likely forfeited this argument by failing to raise it in the trial court. (See *People v. Rundle* (2008) 43 Cal.4th 76, 116.) At the evidentiary hearing, Gonzalez's counsel did not object to the trial court's consideration of the original trial transcripts, nor did she specifically

9

address the evidence related to the predicate offenses used to prove the gang enhancement at trial. Rather, during argument, she stated, "relying on the gang expert also poses several issues." She then mentioned the changes implemented by Assembly Bill No. 333, as well as the California Supreme Court's decision in *People v. Sanchez* (2016) 63 Cal.4th 665, which limited the admissibility of certain types of testimonial evidence from gang experts. She asserted the People were relying on the gang expert testimony to "further extrapolate what Mr. Gonzalez and his co-participant . . . must have been thinking when they engage in certain behaviors," and that doing so did not "amount to proof beyond a reasonable doubt."

In response, the trial court noted there was also the issue of motive, and asked counsel to address "the use of expert testimony to establish the motive." Gonzalez's counsel noted that the gang expert never spoke to Gonzalez or the other participants in this case and asked the court to give the expert's generalized testimony "less weight, considering what the change in law is directing us to do."

Later, the prosecutor clarified the People's position that the expert's testimony "about the gang context, the idea of challenges, disrespect, and standing as motive for retaliation is important, relevant motive testimony that would come in to prove motive; not for propensity, but to give context to the ultimate shooting. She went on to argue the reasonable inferences the court could make from the remaining evidence, including Gonzalez's actions when he returned to the scene after the initial encounter with Ramirez, as evidenced by the video footage and eyewitness accounts.

Accordingly, Gonzalez's argument on appeal, that the evidence used to prove the gang enhancement at the original trial would not be admissible under the revised section 186.22, is not entirely relevant to the trial court's

consideration of the more general expert testimony regarding gang affiliations and culture. And, even if Gonzalez's arguments in the trial court were sufficient to preserve his argument for appeal, the trial court could still properly consider the gang evidence, including the testimony of the gang expert, as relevant to establish Gonzalez's motive. (See *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132 [gang evidence relative to motive, including "gang membership and the gang rivalry" would have been admissible to prove non-gang offenses even if the gang-related charges were bifurcated].)

Gonzalez asserts further that, to the extent the evidence could be admissible as evidence of motive, it should have been excluded as unduly prejudicial under Evidence Code section 352. We disagree. While we acknowledge that gang evidence does have the potential to be prejudicial to a jury, it is nevertheless frequently admitted for purposes of proving motive or intent. (See, e.g., *People v. Tran* (2022) 13 Cal.5th 1169, 1208 ["gang evidence, even if not admitted to prove a gang enhancement, may still be relevant and admissible to prove other facts related to a crime"].) Here, as evidenced by the discussion on the record, the trial court was certainly aware of the law, including the limitations around the use of expert gang testimony. Likewise, as the trier of fact, the trial court was capable of considering the evidence only for relevant purposes, and not as propensity evidence. (See *Mosley, supra,* 53 Cal.App.4th at p. 496.) Moreover, the trial court's written ruling suggests the trial court relied primarily on inferences based on Gonzalez's actions, as seen in the surveillance videos, and not the expert testimony.

Accordingly, we decipher no error in the trial court's considering of gang evidence, including the testimony from Segal, the prosecution's gang expert.

11

### C. Substantial Evidence Supports the Trial Court's Findings

Gonzalez next asserts that, with or without the gang evidence, there was insufficient evidence to prove he intended to aid in an attempted murder. He argues there was no evidence he specifically intended to aid and abet murder or knew the intent of the shooter. Not so.

To be guilty of attempted murder on an aiding and abetting theory under the law as it now stands, the prosecution had to prove that Gonzalez personally harbored express malice or an intent to kill. (*People v. Das* (2023) 96 Cal.App.5th 954, 960, citing *People v. Smith* (2005) 37 Cal.4th 733, 741 [the mental state required for attempted murder is "intent to kill or express malice"].)

As is often the case, there was no *direct* evidence of Gonzalez's intent at the time of the shooting at issue here, meaning there was no evidence that he made any direct statements overtly demonstrating that intent. However, there was ample circumstantial evidence, and the trial court was permitted to infer, as it did, that Gonzalez's actions demonstrated intent. (See, e.g., *People v. Canizales* (2019) 7 Cal.5th 591, 606 ["As we have described on many occasions, intent to kill often must be inferred from circumstantial evidence surrounding the crime"]; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 [because " '[e]vidence of a defendant's state of mind is almost inevitably circumstantial . . . circumstantial evidence is as sufficient as direct evidence to support a conviction' "].)

Here, the prosecution presented evidence that the younger Paradise Hills gang members challenged Gonzalez and Lopez in the market, that they called Bugsy (Ramirez), and that Ramirez then arrived and blocked Gonzalez's truck in the parking lot. After speaking to Ramirez and leaving the area, Gonzalez returned, circled the parking lot several times in a

deliberate fashion, and then slowed down, presumably to allow the shooter to shoot at Ramirez, before fleeing the area. As the trial court found in its written decision, this was strong circumstantial evidence that Gonzalez "was seeking out the victim with the intent to kill him."

Rather than viewing the record in the light most favorable to the judgment, as we must on appeal, Gonzalez characterizes the evidence in the light most favorable to his defense. (See *Henley, supra,* 85 Cal.App.5th at p. 1017.) Gonzalez asserts the actual shooter was never identified, and that there was a reasonable probability that Lopez was the shooter, based primarily on the store manager's testimony that he saw Lopez in the truck. In doing so, Gonzalez appears to ignore other pieces of evidence, such as the testimony of the neighbor that saw someone struggling to get into the backseat after the shooting because the front seat was occupied, suggesting that, even if the manager was correct that Lopez was in the front passenger seat, there was at least one other passenger in the car. There is no indication in the record before us that the trial court failed to consider all the evidence, and we do not reweigh it on appeal.

Regardless, Gonzalez provides no explanation, and points to no evidence, suggesting a motive for Lopez to shoot at Ramirez that was either not gang-related or not known by Gonzalez. There was evidence that, although Lopez had previously "hung out" with members of the Paradise Hills gang, including Ramirez (and his wife), she no longer spoke to them. Moreover, it is undisputed that on the day of the shooting, she was with Gonzalez, a known OTNC gang member, in the Paradise Hills area. That appears to be at least part of the reason the younger Paradise Hills gang members challenged both Gonzalez and Lopez in the Korner Market in the first instance. Moreover, to the extent Gonzalez intends to imply that Lopez

13

may have had some other reason for shooting at Ramirez, the evidence remains that Gonzalez drove the car, circled until they found Ramirez, and then fled afterwards.

Based on the foregoing, we conclude substantial evidence supports the trial court's finding that Gonzalez was still guilty of attempted murder beyond a reasonable doubt, notwithstanding the recent changes to sections 188 and 189.

## III.   DISPOSITION

The order denying Gonzalez's section 1172.6 petition for resentencing is affirmed.

KELETY, J.

WE CONCUR:

IRION, Acting P. J.

DO, J.

14